******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BEACH, J., concurring in part and dissenting in part. I agree with much of the majority's well reasoned opinion. I respectfully dissent, however, with respect to the majority's conclusion that the admission of the testimony of Sergeant Gary Angon of the Waterbury Police Department regarding the location of the inspection of the Jeep involved in the incidents at issue was harmless.

Angon's testimony regarding the inspection quite clearly was testimonial hearsay, and, thus, its admission violated the confrontation clause. See *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Angon testified that an unnamed person from the Waterbury Police Department had acquired information regarding the Jeep's inspection from an unnamed person working with the New York State police. This information was acquired in the course of Angon's investigation of the crime under circumstances that obviously contemplated its use in the prosecution. The defendant, Casey Sinclair, did not have an opportunity to cross-examine the unnamed person who requested this information, nor did he have the opportunity to cross-examine the unnamed person who responded. The information reportedly gathered from the New York police—that the Jeep's registration number showed that it had been inspected at a garage adjacent to the defendant's business—was offered by the state at trial to prove the truth of the matter asserted. The admission of Angon's testimony relaying the information about the inspection, then, quite clearly violated the defendant's rights under the confrontation clause of the sixth amendment.

The majority recognizes the problem and assumes, for the purpose of analysis, that the confrontation clause was violated, but then concludes that the introduction of the evidence was harmless. An examination of the record compels me to conclude that the state has not met its burden to show that the admission of the testimony was harmless beyond a reasonable doubt. As the majority notes, the prosecution sought to prove guilt under a theory of constructive possession, because the narcotics were found in a Jeep that was not in the defendant's exclusive possession. Under this theory, the prosecution was required to prove that "the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it." (Internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 149, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008).

It was not necessary for the state to show ownership or exclusive control of the Jeep, and the defendant could have been found guilty, of course, without the evidence in question. But it is undeniable, from the

record in this case, that the prosecutor used the inferred close connection between the defendant and the Jeep to full advantage. In his closing argument, the prosecutor repeatedly referred to the location of the Jeep's inspection in an effort to establish that the defendant knew about and exercised dominion and control over the heroin hidden in the Jeep *and* that the defendant fit the profile of a drug dealer.

The prosecutor argued, "I have to prove three things. That [the defendant] was in possession of heroin, he knowingly possessed the heroin, [and] he possessed it with intent to sell." In presenting his argument on the second element, the prosecutor began by arguing: "Knowingly possessed. *It's his Jeep.* There's some dispute about that. . . . Winsome Lawrence testified nine times she came to Connecticut . . . every time he picked her up in that Jeep. *There's also the evidence about the Jeep that links that Jeep to being inspected at Sinclair Enterprises, his garage right next to his business.*" (Emphasis added.)

The prosecutor stressed not only the elements of the crime, but also that the defendant's behavior was consistent with that of a drug dealer: he "want[ed] to separate himself from the drugs," a behavior consistent with that of a narcotics dealer, but "there was a mistake . . . to register a car in New York, it has to go through an inspection, and the inspection for the car was done at [the defendant's] place of business. . . . There's a connection, right there, to [the defendant]. He didn't separate himself good enough."

The state argues that Angon's testimony likely did not influence the jury in reaching its judgment because "the state's case against [the defendant] was strong, independent of Angon's testimony about the inspection location." A review of the record, however, shows that the state's evidence was less than overwhelming on the question of whether the defendant knew about and exercised dominion and control over the 10,000 bags of heroin ultimately found in the Jeep. The direct evidence regarding the defendant's guilt was primarily Lawrence's testimony; the state conceded that "the critical issue in the case was the credibility of both Lawrence and the defendant." Lawrence testified that the defendant owned the Jeep, that he had picked her up in the Jeep on several occasions, and that she had seen him open the Jeep's center console, pull a string, and retrieve two bags of heroin from inside. The defendant, by contrast, testified that Lawrence owned the Jeep and that he did not know that there were drugs hidden in the car. On the issue of knowledge about and dominion and control over the Jeep's contents, Angon's testimony regarding the inspection was the only documentary and at least superficially objective evidence tending to suggest that Lawrence's testimony was more likely true than the defendant's testimony. The

testimonial hearsay was not cumulative and was not corroborated by evidence other than Lawrence's testimony.

I stress that the hearsay, surely relevant to the issue of constructive possession, was used to perhaps greater effect to show more generally that the defendant was a drug dealer. A theme of the prosecution was that the defendant created a distance between the actual dealing and himself, so that others would be blamed if the enterprise faltered. In pursuit of that strategy, he "used" Lawrence and a false registration for the Jeep.[1] Therefore, the admission of Angon's testimony was not harmless beyond a reasonable doubt.

If the error were merely evidential, there may be a good argument that the defendant had not proved harm. But on the record in this case, I respectfully cannot agree that the error was harmless beyond a reasonable doubt. The prosecutor used the evidence to hammer home the defendant's nefarious ways.

Accordingly, I would reverse the judgment of the trial court and remand the case for a new trial.[2]

[1] The prosecutor argued: "The tan Jeep Liberty. His car. Maybe not registered to his name, but why not? He wants to separate himself from the drugs. Let's talk about the connections with the tan Jeep Liberty to [the defendant]. It's if—if you put it in some—well, it's in someone else's name. But there was a mistake. Because there—to register a car in New York, it has to go through an inspection, and the inspection for the car was done at [the defendant's] place of business. . . .

"So, where's it inspected? Whose car goes there for service? Winsome Lawrence because [the defendant] sent her there. . . . Well, that's convenient, it's right next door. And Winsome Lawrence said it was his garage, okay, and that's where the inspection for the Jeep was done. There's a connection, right there, to [the defendant]. He didn't separate himself good enough. . . .

"What is this information about the car from [the defendant]; it's consistent with a drug dealer trying to separate himself from the drugs in that car. It's consistent in the manner in ways in which they operate. What connection does Winsome Lawrence have to the car? [The defendant.] She testified at length, it's not her car; the comment about the Jeep, she testified at length, it wasn't her car, that she owned a black Oldsmobile . . . .

***

"He wants to use her again; don't let him do it. His Jeep Liberty, he's dropping a car, everything he does is consistent with how narcotics dealers operate at that level. It's his heroin, it's his money, and evidence shows beyond a reasonable doubt he's guilty of this charge."

[2] I would not reach the claim of prosecutorial impropriety because I would not anticipate that the conduct would occur on retrial. I concur with the majority as to part III of its opinion.